**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHUCKIE THOMAS UNSWORTH, | ) | CASE NO. 3:06CV1856 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| KHELLEH KONTEH, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Petitioner, Chuckie Thomas Unsworth ("Unsworth"), challenges the constitutionality of his conviction in the case of *State v. Unsworth*, Lucas County Common Pleas Case Nos. CR02-03515 and CR03-01510.  Unsworth, *pro se*, filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on August 1, 2006 with the United States District Court for the Northern District of Ohio.  On January 16, 2007, Respondent filed his Answer/Return of Writ.  (Doc. No. 10.)  Unsworth filed his Traverse on March 5, 2007.  (Doc. No. 13.)  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, the Magistrate Judge recommends Unsworth's petition be DENIED.

## I.  Procedural History

### A.      Conviction

The Lucas Cuyahoga County Grand Jury charged Unsworth with one count of burglary in

violation of Ohio Revised Code ("O.R.C.") § 2911.11(A)(1) in Criminal Case No. CR02-03515 and two counts of rape in violation of O.R.C. § 2907.02(A)(2) in Criminal Case No. CR03-01510.  (Doc. No. 10, Exhs. 1 & 2.)  The two criminal cases were consolidated for trial. (Doc. No. 10, Exhs. 11 & 12.)

Unsworth pled "not guilty" to all charges in the indictments.[1]  Before trial, Unsworth filed a Motion to Suppress Statements and a Motion for Production of Exculpatory Evidence. (Doc. No. 10, Exhs. 3 & 4.)  The trial court took the former motion under advisement and granted the latter.  (Doc. No. 10, Exh. 5.)  Thereafter, Unsworth filed a motion to dismiss the two counts of rape; the motion was denied.  (Doc. No. 10, Exhs. 6 & 8.)  Unsworth, through counsel, also filed a motion *in limine* requesting an exclusion of genetic evidence.  (Doc. No. 10, Exh. 9.) The trial court took the motion under advisement but ultimately denied it.  (Doc. No. 10, Exhs. 11 & 16.)

On May 7, 2003, a jury found Unsworth guilty on all three counts.  (Doc. No. 10, Exhs. 18 & 19.)  The trial court sentenced Unsworth to three consecutive ten-year sentences and classified Unsworth as a sexual predator after a hearing on the matter.  (Doc. No. 10, Exhs. 18-22.)

**B.      Direct Appeal**

On July 2, 2003, Unsworth, represented by new counsel Carol Damrauer-Viren, timely filed a Notice of Appeal concerning his convictions for rape and an Amended Notice of Appeal on July 8, 2003 appealing his designation as a sexual predator.  (Doc. No. 10, Exhs. 23 & 24.)

---

[1]  During his criminal proceedings, Unsworth was represented by two attorneys Adrian P. Cimerman, who withdrew from representation and John Thebes, the attorney who represented Unsworth at trial.

2

On June 15, 2004, Unsworth's appellate counsel filed an *Anders* brief and informed the Court that Unsworth wished to raise the following errors that she believed lacked merit: Unsworth was deprived of his right to a speedy trial under both the Ohio and Federal Constitutions; Unsworth's sentences are not supported by the record; and Unsworth was deprived of a fair trial under Ohio and federal law. (Doc. No. 10, Exh. 25.) On June 17, 2004, Unsworth's counsel filed (1) a motion for delayed appeal pursuant to Ohio Appellate Rule 5 challenging the burglary conviction and (2) a motion to consolidate the two appeals. (Doc. No. 10, Exh. 26 & 27.) On August 2, 2004, the state appellate court granted the motion for a delayed appeal and consolidated the two cases. (Doc. No. 10, Exh. 28.) On July 27, 2004, Unsworth, *pro se*, filed a brief raising six additional assignments of error. (Doc. No. 10, Exh. 30.) On September 2, 2005, the state appellate court affirmed the trial court's judgment. (Doc. No. 10, Exh. 33.)

On October 12, 2005, Unsworth, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio. (Doc. No. 10, exh. 34.) January 25, 2006, the Supreme Court of Ohio denied leave to appeal and dismissed Unsworth's claims as not involving any substantial constitutional question. (Doc. No. 10, Exh. 36.)

**C.      Application to Reopen Direct Appeal**

On November 22, 2005, Unsworth, *pro se*, filed an application to reopen his direct appeal pursuant to Ohio App. R. 26(B) ("Rule 26(B)"). (Doc. No. 10, Exh. 38.) On January 11, 2006, the state appellate court dismissed Unsworth's Rule 26(B) application, finding that there were no substantive grounds for relief. (Doc. No. 10, Exh. 39.)

On February 27, 2006, Unsworth filed a Notice of Appeal with the Supreme Court of Ohio challenging the denial of his Rule 26(B) application. (Doc. No. 10, Exh. 42.) On May 10,

2006, the Ohio Supreme Court dismissed Unsworth's appeal as not involving any substantial

constitutional question.  (Doc. No. 10, Exh. 45.)

**D.     Federal Habeas Petition**

Unsworth filed a Petition for Writ of Habeas Corpus and asserts the following grounds

for relief:

> Ground One: Appellant was denied his constitutional right to due process,
> compulsory process and the effective assistance of counsel guaranteed by the 5th,
> 6th and 14th Amendments to the United States Constitution when trial
> counsel failed to move the trial court for expert assistance in DNA analysis.
>
> Ground Two: Appellant was denied his constitutional right to due process
> and the effective assistance of counsel and compulsory process guaranteed by
> the 5th, 6th and 14th Amendments to the United States Constitution when trial
> counsel failed to move the trial court for expert assistance in the field of
> fingerprint analysis.
>
> Ground Three: Appellant was denied his constitutional right to due process
> and the effective assistance of counsel guaranteed by the 5th, 6th, and 14th
> Amendments to the United States Constitution when trial counsel failed to
> move the trial court to suppress genetic evidence and finger print evidence
> due to evidence of tampering and contamination.
>
> Ground Four: Appellant was denied his constitutional right to due process
> and the effective assistance of counsel guaranteed by the 5th, 6th, and 14th
> Amendments to the United States Constitution when trial counsel failed to
> object to a prejudicial statement made during trial and closing arguments by
> prosecution.
>
> Ground Five: Appellant was denied his constitutional right to due process
> and the effective assistance of counsel guaranteed by the 6th and 14th
> Amendments to the United States Constitution when counsel failed to move
> the trial court for suppression of the State's evidence due to a lack of probable
> cause for the search warrants obtained for genetic and finger print samples.
>
> Ground Six: Appellant was denied his constitutional right to due process and
> the effective assistance of counsel guaranteed by the 14th Amendment to the
> United States Constitution when counsel stipulated to a warrant/probation
> holder as cause to deny the Appellant the triple count provision for his speedy
> trial pursuant to O.R.C. §§ 2945.71 & 2945.73.

4

Ground Seven: Appellant was denied his constitutional right to due process and to the effective assistance of Appellate Counsel guaranteed by the 6th and 14th Amendments to the United States Constitution when Appellant's counsel filed an *Anders* brief for the case at bar and forced the Appellant to proceed in *pro se* without transcripts during the direct appeals process.

Ground Eight: Appellant was denied his constitutional right to due process and the effective assistance of Appellate Counsel guaranteed by the 14th Amendment to the United States Constitution when the Appellate Court merged both of Appellant's cases during calculation of Appellant's speedy trial time in order to toll the time for case no. CR-03-1510 by using motions made in case no. CR-02-3515 thereby denying the Appellant his right to a speedy trial guaranteed by the 6th Amendment to the United States Constitution.

Ground Nine: Appellant's right to the effective assistance of counsel and equal protection of the laws was violated when Appellate Counsel failed to raise trial counsel's failure to object to the sentencing court's error in imposing consecutive sentences for offenses arising from a single incident.

Ground Ten: Appellant was denied his right to the effective assistance of counsel when Appellate Counsel failed to raise sentencing court's error in imposing a non-minimum sentence without submitting the additional evidence used during sentencing to a jury.

Ground Eleven: Appellate counsel was ineffective in not raising trial court's error in overruling defense counsel's objection and motion to suppress the victim's in-court identification as tainted and unreliable in violation of Appellant's Sixth Amendment right to due process guaranteed by the Fourteenth Amendment to the United States Constitution.

(Doc. No. 1.)

## II.  Summary of Facts

The state appellate court summarized the facts underlying Unsworth's conviction as

follows:[2]

This is an appeal from a judgment of the Lucas County Court of Common Pleas.  Appellant was found guilty of one count of aggravated burglary, in

---

[2] Factual determinations by state courts are entitled to a presumption of correctness.  *See, e.g., House v. Bell,* 283 F.3d 37 (6th Cir. 2002).

violation of R.C. 2911.11(A)(1), and two counts of rape, in violation of R.C. 2907.02(A)(2).  Appellant was sentenced to three, consecutive ten-year terms of incarceration.  For the reasons that follow, this court affirms the judgment of the trial court.

* * *

The undisputed facts relevant to the issues raised on appeal are as follows. During the morning hours of October 11, 2002, an elderly widow, Florence Sheroian, was alone in her home.  Mrs. Sheroian went to her basement to do her laundry.  After returning upstairs, she went to the bathroom.  While in the bathroom, Sheroian heard an intruder in her home.  She went into the hall, observed an unknown male coming towards her, asked the intruder to leave, and attempted to lead him to the front door.  Rather than leave the premises, the intruder locked the front door, confronted Sheroian, and demanded money and her car. She advised him she had no car and told him where he could find her purse.

The assailant ordered Sheroian to her knees, despite her pleas due to her two knee replacements, and committed multiple acts of rape. The eighty-one year old grandmother was then forced to insert her tongue into the assailant's anus. Following these acts, the assailant threatened to kill her if she reported the crimes and fled on foot.

The record reflects that during the course of investigation into these crimes, the investigating officers recovered physical evidence from the scene. Significantly, a left ring fingerprint recovered from the window used to enter the premises was determined by expert testimony to be a 14 point match with appellant. A rape kit was performed and DNA evidence was recovered. An expert forensic DNA analyst testified the DNA was consistent with appellant's DNA and inconsistent with all non Caucasian males and also was inconsistent with 99.5 percent of all Caucasian males.

Defense counsel filed a motion to suppress statements based on *Miranda*, which was granted. This attorney later withdrew with the consent of appellant and substitute counsel was appointed. A *Daubert* motion was also filed and a hearing conducted. During trial, substitute counsel for appellant made a Crim.R. 2[9] motion for acquittal, which was denied.

Appellant's chief defense witness, Charlene Brown, was appellant's girlfriend. Brown, a self-employed house cleaner from Toledo, testified that she met appellant at an area tavern in July 2002, and he moved into her home the next month. Brown presented exculpatory testimony based upon a notation on her calendar.

6

Brown placed a broken heart with an arrow through it on October 10, 2002, the day before the crime. Brown testified that she was certain appellant had been at home ill and in bed on October 11, 2002, because of the sad heart symbol on her calendar. This symbol was placed on her calendar because appellant had stayed out all night and not brought home his paycheck to pay household bills. These actions "broke her heart," so she put the broken heart on her calendar. She testified that appellant spent the following day at home ill, resting in bed. Despite this claimed first-hand exculpatory knowledge, she failed to report this alibi information to anyone for many months following her live-in boyfriend's arrest. Appellant was ultimately convicted on all charges.

(Doc. No. 10, Exh 33.)

## III.  Review on the Merits[3]

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Unsworth filed his habeas petition after the effective date of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law can be determined only by examining the holdings of United States Supreme Court, as opposed to dicta.  *See Williams v. Taylor*, 529 U.S. 362, 412

---

[3]  Respondent has not alleged that Unsworth's petition is untimely nor has Respondent suggested that any of the grounds contained in Unsworth's petition are procedurally defaulted.

7

(2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  Nevertheless, an explicit statement by the Supreme Court is not required; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002).  As the plain language of the statute indicates, the inquiry is limited to decisions by the Supreme Court. *Williams*, 529 U.S. at 412.

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* An incorrect state court decision may not be unreasonable under this standard. *Id.* at 410-11. For this reason, a federal habeas court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, No. 03-2113, 2006 WL 68438, at *4 (6th Cir. Jan.10, 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.1998) ("[AEDPA] tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called

8

unreasonable.")  The "unreasonable" requirement is a high bar.  *See Ruimveld*, 404 F.3d at 1010.

**A.      Grounds One through Six: Ineffective Assistance of Trial Counsel**

In grounds one through six, Unsworth alleges that he was denied his right to effective assistance of trial counsel because trial counsel: (1) failed to request expert assistance to rebut the State's DNA evidence; (2) failed to request expert assistance to rebut the State's fingerprint evidence; (3) failed to move for the suppression of DNA evidence and fingerprint evidence where there was evidence of tampering and contamination; (4) failed to object to prosecutorial misconduct; (5) failed to move for the suppression of State's evidence gathered without probable cause; and (6) stipulated to a probation/warrant holder as cause to deny Unsworth's speedy trial rights.

In order to establish ineffective assistance of counsel, a petitioner must show that counsel's conduct fell so far below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution, and that such deficient performance so prejudiced the defense as to render the proceeding unfair. *See Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Deficiencies in counsel's performance must "be prejudicial to the defense in order to constitute ineffective assistance." *Id.* at 692.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  That is to say, it must be demonstrated that counsel's performance "caused the defendant to lose what he otherwise would probably

9

have won" and that it was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Disagreements by a defendant with tactics and/or strategies will not support a claim of ineffective assistance of counsel; and, a petitioner in habeas corpus must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy. *Strickland,* 466 U.S. at 689; *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Vague or conclusory allegations are insufficient to establish the prisoner's burden that counsel's performance was deficient and that the defendant suffered prejudice as a result. *See United States v. Cronic*, 466 U.S. 648, 666 (1984) (ineffective assistance of counsel claims can only be made out by pointing to specific errors made by counsel).

### 1.    Ground One: Expert Rebuttal of DNA Evidence

Unsworth alleges that his trial counsel was ineffective because he did not present expert testimony to rebut the State's DNA evidence. Respondent argues that Unsworth's trial counsel was not deficient as illustrated by his attempts to suppress the DNA testimony by filing a motion *in limine* and his vigorous cross-examination of the DNA witnesses.[4] (Doc. No. 10, Exh. 31.)

At the request of Unsworth's counsel, a *Daubert* hearing was held on April 16, 2003, during which defense counsel cross-examined the State's DNA expert. (Doc. No. 10, Exh. 56.) The State brought in a DNA tester from the laboratory that performed the DNA analysis in New

---

[4] The Court gleaned Respondent's arguments from the State's brief submitted on direct appeal in state court. Contrary to the Court's order, Respondent simply quoted the state appellate court's opinion, which is itself conclusory, and merely opined that the decision was neither contrary to, nor an unreasonable application of clearly established federal law. This is unacceptable. Counsel for Respondent is cautioned against submitting a brief containing such conclusory arguments and perfunctory analysis in the future.

Orleans.  *Id*.  Defense counsel questioned the DNA expert with respect to methodology, potential

contamination, and the laboratory's statistical database.  *Id*.  After the hearing, trial counsel also

submitted a memorandum in support of his motion *in limine*, arguing that the database utilized

by the laboratory was extremely limited.  (Doc. No. 10, Exh. 13.)  During trial, Unsworth's

counsel cross-examined both of the State's DNA witnesses and probed for potential weaknesses

in their testimony.  (Tr. 513-521, 598-603.)

  After a thorough review of both the trial transcript and the *Daubert* hearing transcript, it

is evident that trial counsel's performance did not fall below acceptable standards of

representation.  Unsworth's argument that his counsel should have called a DNA expert is purely

speculative.  Unsworth has presented no evidence that retaining an expert to conduct

independent testing would have yielded different results or that such expert would have offered

testimony disapproving of the methods employed by the State's DNA experts.  The Court cannot

presume that trial counsel's failure to call a DNA expert prejudiced Unsworth's defense.  The

Court will not second guess defense counsel's trial strategy.

  Because Unsworth's trial counsel exercised reasonable diligence in attempting to exclude

or undermine the testimony of the State's DNA experts and because Unsworth has failed to

establish that failure to retain a DNA expert would have affected the outcome, this assignment of

error is not well taken.

  **2.**  **Ground Two: Expert Rebuttal of Fingerprint Evidence**

  Unsworth alleges that his trial counsel was ineffective because he did not call an expert

witness to contradict the State's evidence concerning fingerprints.  Respondent argues that

Unsworth's trial counsel's performance was not deficient because Unsworth's claim is purely

11

speculative.  (Doc. No. 10, Exh. 31.)

Unsworth points out that there were forty-nine (49) potential matches to the partial fingerprint obtained from the crime as a result of the computer system's search.[5]  (Doc. No. 13.) Unsworth also alleges that a comparison of the prints will show that they are different.  *Id*. Unsworth is not a fingerprint expert and his allegation that the fingerprint samples do not match is pure conjecture on his part.  Unsworth has failed to provide the Court with any expert testimony or evidentiary submission to corroborate his allegation.

Detective Terry Cousino, a crime scene investigator with approximately two-hundred hours of fingerprint-related training, testified that he recovered a latent fingerprint from the exterior window of the victim's house.  (Tr. 364-365, 376.)  Detective Cousino testified that he compared the latent fingerprint from the crime scene with Unsworth's known fingerprint and found 14 or 15 identical points and no differences.  (Tr. 382.)  He further testified with a reasonable degree of certainty that the fingerprint left at the crime scene was made by Unsworth.[6]  (Tr. 386.)

Detective Gerald Schriefer, a member of the police department's scientific investigation unit, testified that he attended a two-week course in the area of fingerprinting and had been

---

[5]  Detective Gerald Schriefer testified that somewhere between twenty and forty possible matches were generated after the print recovered at the crime scene was scanned by the computer.  (Tr. 441-442.)

[6]  Unsworth ascribes great weight to the fact that a palm print found on a filing cabinet in the house did not match his palm print.  As explained by Detective Cousino, the palm print could have come from anybody, but that the fingerprint retrieved from a point of entry, which was a positive match for Unsworth, was more significant.  (Tr. 394-397.) Unsworth appears to have an unfounded belief that the palm print and fingerprint, recovered from different surfaces in the house, must have come from the same individual.

working with fingerprints for six years.  (Tr. 421-422.)  Detective Schriefer testified that he also compared Unsworth's known fingerprint with the print retrieved from the crime scene and found they were a positive match.  (Tr. 438-440.)

Unsworth's counsel attempted to attack the accuracy of the fingerprint match by asking both detectives whether it was possible for there to have been some distinctive feature of Unsworth's known whole fingerprint that would have eliminated him from consideration, as the print recovered from the crime scene was only a partial print.  (Tr. 400, 445.)  Both detectives stated that it was not possible as there were sufficient identifiers and that a whole fingerprint is not necessary for a positive identification.  (Tr. 400, 445-446.)

Unsworth's argument that his counsel should have called a fingerprint expert suffers from the same shortcomings as his argument pertaining to a DNA expert – it is purely speculative.  Unsworth has presented no evidence that retaining a fingerprint expert would have yielded a different conclusion than the one reached by the detectives.  Unsworth's lay opinion that the prints are not a positive match is insufficient to show that his trial counsel's failure to call a fingerprint expert prejudiced Unsworth's defense.  The Court has cannot assume that calling a fingerprint expert would have been beneficial rather than detrimental to Unsworth's defense and cannot second guess defense counsel's trial strategy.

Because Unsworth's trial counsel made reasonable attempts to downplay or discredit the fingerprint evidence, his conduct was constitutionally adequate.  Moreover, because Unsworth has failed to establish that trial counsel's failure to retain a fingerprint expert would have affected the outcome, his assignment of error is not well taken.

13

### 3.      Grounds Three and Five: Suppression of DNA and Fingerprint Evidence

Unsworth argues that his trial counsel was constitutionally deficient for failing to move for the suppression of the fingerprint and DNA evidence on the grounds that they were altered or contaminated.

Unsworth argues that the State tampered with the DNA evidence because a hair recovered from the victim's mouth was not DNA tested.  (Doc. No. 13 at 10.)  Unsworth apparently suggests that the State intentionally or negligently lost the hair recovered from the victim.  Carrie Lynn Baker, a nurse at St. Vincent's Emergency Room, testified at trial that she examined the victim on the day she was raped.  (Tr. 320-321, 329-330.)  Baker testified that pubic hairs recovered from the victim's mouth were placed in an envelope in the rape kit box. (Tr. 355-356.) Unsworth offers no evidentiary support for his contention that the pubic hairs were lost.  Unsworth's argument proceeds under the assumption that DNA testing of the hairs would have yielded more reliable results.  There is no evidence to support Unsworth's unsubstantiated lay opinion.

Unsworth further argues that the fingerprint recovered from the victim's house was contaminated due to the presence of three dark lines.  (Doc. No. 13 at 10.)  Again, Unsworth's argument is entirely conclusory and lacking any supporting evidence.  Unsworth has failed to cite any evidence that the fingerprint retrieved from the victim's residence was contaminated or unusable.

Trial counsel was not ineffective for failing to move for suppression of either the DNA evidence or the fingerprint evidence.  Unsworth has failed to demonstrate any factual basis on which trial counsel could have reasonably moved the trial court to suppress the evidence.

14

"Being officers of the court, members of the bar are bound 'not to clog the courts with frivolous motions or appeals.'"  *Smith v. Robbins*, 528 U.S. 259, 294 (2000), *citing Polk County v. Dodson*, 454 U.S. 312, 323 (1981).  As a result, it would be anomalous to find that an attorney was ineffective for failing to make a motion that lacked a factual basis.  Therefore, Unsworth's third ground for relief lacks merit.

In ground five of his petition, Unsworth alternatively argues trial counsel was ineffective by failing to move for suppression of the DNA and fingerprint evidence on the grounds that the state lacked probable cause for obtaining the DNA and fingerprint samples.  (Doc. No. 13 at 12.)  Unsworth asserts that the evidence was obtained pursuant to search warrants, but alleges the warrants lacked probable cause.  *Id*. at 13.  Unsworth does not explain how the warrant was deficient but avers that probable cause was lacking because: the victim twice failed to pick him out of a photo array; the composite sketch did not resemble him; no witnesses came forward with evidence suggesting that he was a suspect; a palm print retrieved from the victim's house did not match his palm print; and he had an alibi witness.  *Id*.

In addition, Unsworth has failed to attach a copy of the search warrant to his pleadings.  In fact, Unsworth's entire argument is unclear, as he fails to describe the manner in which his fingerprints or DNA sample was obtained by the State.  Based on the testimony of Detective Cousino, when he entered the fingerprint recovered from the crime scene into the computer system, Unsworth's print came up as a possible match.  (Tr.  381.)  Thus, it is clear that the State already had a copy of Unsworth's fingerprints before he was searched or arrested.  It is unclear whether Unsworth was fingerprinted, and, if so, under what circumstances (*i.e.* as part of his arrest or a separate search).  The DNA sample obtained from Unsworth was recovered using an

15

oral cotton swab after Unsworth already was arrested and incarcerated. (Tr. 539-541.)

Unsworth has not pointed to any evidence of record that actually indicates his fingerprints or DNA sample were obtained pursuant to a search warrant. The law is clear that the state is not required to obtain a search warrant in order to gather DNA samples or fingerprints. Fingerprints may be obtained by means of a grand jury subpoena. *See, e.g., United States v. Boykins*, 966 F.2d 1240, 1243 (8th Cir. 1992) ("Grand jury subpoenas for fingerprints and photographs do not violate the Fourth or Fifth Amendments.") *citing United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764 (1973); *United States v. Bonds*, 12 F.3d 540, 549 (6th Cir. 1993); *United States v. Anglian*, 784 F.2d 765, 769 (6th Cir. 1986); *United States v. Williams*, 48 Fed. Appx. 974, 975 (6th Cir. 2002). Also, in the absence of an illegal arrest, "fingerprints taken as part of a routine, booking procedure are not fruit of a poisonous tree." *United States v. Olivares-Rangel*, 458 F.3d 1104 (10th Cir. 2006). Unsworth has not alleged that his arrest was illegal. DNA samples also may be obtained by means of a grand jury subpoena. *See, e.g., Farrell v. United States*, 162 Fed. Appx. 419, 421 (6th Cir. 2006); *In re Shabazz*, 200 F. Supp.2d 578, 585 (D.S.C. 2002) ("A grand jury subpoena duces tecum requiring a saliva swab must be based on reasonable individualized suspicion that Petitioner was engaged in criminal wrongdoing."); *United States v. Owens*, 2006 WL 3725547 (W.D.N.Y. Dec. 15, 2006); *cf. Padgett v. Ferrero*, 294 F.Supp.2d 1338 (N.D. Ga. 2003) ("In the face of Fourth Amendment challenges, the overwhelming majority of courts have held that DNA collection and typing laws [concerning convicted felons] are constitutional."); *United States v. Bean*, 214 Fed. Appx. 568 (6th Cir. 2007) (obtaining a DNA sample does not violate a defendant's Fifth Amendment right against self-incrimination because DNA samples are not testimonial in nature.) Where the initial

16

seizure of a defendant is not constitutionally infirm, a defendant's fingerprints and DNA samples should not be suppressed.  *See United States v. Cloud*, 2007 U.S. Dist. LEXIS 3211 at *11 (D. Minn. Jan. 16, 2007).  Unsworth has not made any argument that his arrest was constitutionally infirm.

Finally, Respondent argues, without informing the Court in any way as to facts underlying this issue, that there is a presumption that search warrants issued upon probable cause are reasonable and that Unsworth has presented no evidence beyond his opinions to rebut the presumption.  (Doc. No. 10, Exh. 31.)  Assuming, *arguendo*, that the disputed evidence was obtained pursuant to a search warrant, "there is, of course, a presumption of validity with respect to the affidavit supporting the search warrant."  *Franks v. Delaware*, 438 U.S. 154, 171 (1978). The "evidence" presented by Unsworth is insufficient to rebut the presumption of validity. Unsworth was arrested on December 6, 2002.  (Doc. No. 10, Exh. 33 at 5.)  Without citing any law to support his argument, Unsworth argues that probable cause was lacking because: the victim twice failed to pick him out of a photo array; the composite sketch did not resemble him; no witnesses came forward with evidence suggesting that he was a suspect; a palm print retrieved from the victim's house did not match his palm print; and he had an alibi witness. These are potential defenses, but do not negate probable cause as the fingerprints matched.[7]

For the foregoing reasons, this assignment of error is not well taken.

_____

[7]  The existence of a non-matching palm print in the victim's home does not detract from a finding of probable cause as a matching, latent fingerprint recovered from the window was sufficient to establish Unsworth's unexplained presence at the victim's home.

### 4.       Ground Four: Prejudicial Statements by Prosecution

Unsworth argues that his trial counsel was ineffective for failing to object to multiple statements made by the prosecution that were prejudicial.  Specifically, Unsworth objects to the following: (1) prosecution's statement to an alibi witness suggesting that he could produce a witness, Mark Grolle, who could contradict her testimony concerning which day of the week Unsworth received his paycheck; (2) prosecution's statement that Unsworth could have altered his appearance by shaving his head or growing a mustache; (3) prosecution's statement during closing arguments that the alibi witness, Unsworth's girlfriend, "loved him so much ... that she let him sit there charged with an offense until she came here and testified yesterday" (Tr. 791); and (4) prosecution's statement during closing arguments that "99.5 percent of all Caucasians can be excluded" as a source of the DNA sample.  (Tr. 797.)  The appellate court found the record is "wholly devoid of evidence of prosecutor misconduct [and] [t]his frivolous allegation warrants no further consideration."  (Doc. No. 10, Exh. 33 at 7.)

The Court shall construe Unsworth's argument as an ineffective assistance of trial counsel claim based on a failure to object to alleged prosecutorial misconduct.  First, Unsworth's trial counsel moved the trial court to strike the prosecution's question to the alibi witness concerning the testimony of Mark Grolle.  (Tr. 739.)  The trial court granted the motion and instructed the jury to disregard both the question and the answer.  (Tr. 750-751.)  Therefore, Unsworth's argument with respect to this statement is wholly without merit as trial counsel successfully petitioned the removal of the prejudicial statement.

Unsworth objects to the second statement and argues there was no evidence to suggest he altered his appearance.  (Doc. No. 13 at 11.)  The failure of Unsworth's counsel to object to this

18

statement can only be ineffective assistance of counsel if the prosecutor's actions were legally objectionable. *See, e.g., Bradley v. Birkett*, 2006 U.S. App. LEXIS 21510 at *17 (6th Cir. Aug. 21, 2006) (finding trial counsel's failure to object to alleged prosecutorial misconduct cannot be constitutionally deficient where the prosecutorial misconduct claim lacks merit); *see also Slagle v. Bagley*, 2006 U.S. App. LEXIS 20240 at *29 (6th Cir. Aug. 8, 2006) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."), *quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982). The victim identified Unsworth at trial as her assailant. (Tr. 281-282.) She testified that at the time of the attack, Unsworth was clean shaven but had a definite hairline. (Tr. 275.) When she identified Unsworth at trial, he had facial hair (a goatee) and a shaved head. (Tr. 282, 294.) Unsworth's counsel moved to suppress the victim's identification of Unsworth but the motion was overruled. (Tr. 279-281.) Unsworth's counsel attempted to discredit the victim's identification by asking questions that highlighted the differences in Unsworth's appearance at the time of trial compared to her description after the attack. (Tr. 290-294.) His trial counsel also asked questions concerning the victim's inability to select Unsworth out of two photo arrays presented to her. *Id*. Under these circumstances, the prosecutor's remarks in closing statement that Unsworth could have grown a beard and shaved his head from the time of the attack until the time of trial was permissible and did not result in prosecutorial misconduct. Therefore, defense counsel's failure to object to the statement is not ineffective assistance.

The prosecution's statement during closing arguments that the alibi witness "loved [Unsworth] so much ... that she let him sit there charged with an offense until she came here and testified yesterday" was merely an accurate summarization of the testimony that had been

19

elicited during the cross-examination of Unsworth's alibi witness.[8]  (Tr. 663-666, 791.)  As such, the prosecution's statement was not improper and Unsworth's trial counsel could not have erred by failing to object.

Finally, Unsworth's argument that the prosecutor engaged in misconduct during closing arguments by the statement that "99.5 percent of all Caucasians can be excluded" and that defense counsel should have objected to the comment is frivolous.  The prosecution merely reiterated testimony proffered by a witness.

In addition, because none of the prosecution's statements identified by Unsworth, either on their own or collectively, deprived Unsworth of a fair trial, his trial counsel's failure to object to the prosecution's statements was neither deficient nor prejudicial.  For the foregoing reasons, Unsworth's argument that he was deprived of effective assistance of counsel based upon his attorney's failure to object to alleged prosecutorial misconduct is not well taken.

### 5.    Ground Six: Right to a Speedy Trial

Unsworth alleges that his trial counsel acted ineffectively by stipulating to a

---

[8]      Q:    Do you love Chuckie Unsworth?

     A:    Yes.

     Q:    And loving him you knew and let him set [sic] there or knew and let him be charged with this [crime] and took no action and didn't tell the police or the prosecutor's office [about the alibi] until you're testifying here today?

     A:    Correct.

(Tr. 665-666.)

warrant/probation holder as cause to deny him the benefit of the triple count provision of O.R.C.

§§ 2945.71 & 2945.73 with respect to his speedy trial rights.

Unsworth fails to cite any law suggesting that a violation of the provisions of Ohio's

speedy trial statute necessarily results in a *de jure* violation of his Sixth Amendment right to a

speedy trial.  Instead, Unsworth relies exclusively on Ohio case law in support of his claim.  A

federal court reviewing a petition for habeas corpus is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States.  *See Estelle v. McGuire*, 502 U.S.

62, 68 (1991).  "A federal court may not issue the writ [of habeas corpus] on the basis of a

perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).   However, if the error is

so egregious as to amount to a denial of fundamental fairness or of other federal rights, the

federal court may grant the habeas petition.  *See id.*

Unsworth's trial counsel filed a motion seeking dismissal of the rape charges on the

grounds that the ninety days had expired with respect to the rape charges.[9]  (Doc. No. 10, Exh.

6.)  Unsworth was arrested on December 6, 2002 and brought to trial on May 5, 2007.  (Doc. No.

10, Exh. 33.)  One-hundred fifty (150) days elapsed from the time of arrest until trial which, if

subject to the triple count provision, is the equivalent of four-hundred fifty (450) days.  The State

of Ohio opposed the motion on the grounds that there was a holder on Unsworth for probation

violations from Mississippi and Michigan.  (Doc. No. 10, Exh. 7.)  The State of Ohio argued that

a person in custody with a holder for a probation violation is not entitled to the triple count

---

[9]  Pursuant to O.R.C. § 2945.71(C)&(E), a person charged with a felony must be brought
to trial within two hundred seventy days after that person's arrest and "each day during
which the accused is held in jail in lieu of bail on the pending charge shall be counted as
three days."  Therefore, an accused held in jail should normally be brought to trial within
ninety days.

provisions of O.R.C. § 2945.71(E). *Id.*  Unsworth's counsel stipulated to the admissibility of the probation violation holder from the state of Mississippi.  (Doc. No. 10, Exh. 53.)  The trial court found that Unsworth's motion to dismiss was not well founded as his time in custody was not subject to the triple count provision due to the existence of a valid holder and 270 days had not elapsed since his arrest.  *Id.*  This Court previously held that "the triple count provision does not apply when the State is holding a defendant pursuant to other charges, [n]or does it apply when the State is holding the accused on a parole or probation violation holder."  *Thompson v. Bradshaw*, 2007 U.S. Dist. LEXIS 51203 at *33 (N.D. Ohio 2007), *citing State v. Brown*, 64 Ohio St. 3d 476, 597 N.E.2d 97, 99 (Ohio 1992).

Because Unsworth is alleging a violation of state law, his claim is not cognizable upon habeas review unless the error of state law is so egregious that it denies fundamental fairness to a petitioner.  Here, the State's application of its speedy trial statute and its finding that a valid holder negated the triple counting provision did not deprive Unsworth of fundamental fairness in proceedings.  Unsworth has made no argument that Ohio's speedy trial rights are offensive to the speedy trial rights contained in the Federal Constitution.  In addition, the state appellate court found that several motions, all initiated by Unsworth, resulted in a total of seventy-one (71) days of tolling pursuant to O.R.C. § 2945.72.[10]  (Doc. No. 10, Exh. 33 at 5-6.)

---

[10]  The tolling determination is consistent with statute and Ohio case law.  *See, e.g., State v. Sanchez*, 853 N.E.2d 283, 110 Ohio St. 3d 274 (Ohio 2006) (filing of a motion *in limine* by a defendant tolls the speedy-trial time for a reasonable period to allow the state an opportunity to respond and the court an opportunity to rule.); *State v. Baker*, 2006 Ohio App. LEXIS 2377, 2006-Ohio-2516 (Ohio Ct. App. May 22, 2006) (finding that defendant's filing of a motion to suppress tolled the speedy trial clock for the period of time during which the motion was pending).  Seventy-one (71) days of tolling would have reduced the amount of time that counted towards the 270 day period to 79 days – an amount that is the equivalent of 237 days if subject to the triple count provision.

The issue, however, is whether Unsworth's counsel rendered ineffective assistance by stipulating to the admissibility of the holder. Unsworth has neither presented any argument nor identified any evidence in the record that the probation holder was invalid. (Doc. No. 13 at 14-18.) Instead, Unsworth argues that a holder must be formally served upon a detained defendant before it tolls the triple count provisions. *See State v. Rembert*, 1989 Ohio App. LEXIS 5100 (Ohio Ct. App. 1989).

Unsworth's argument fails for two reasons. First, Unsworth fails to demonstrate that the holder was not served upon him before the expiration of ninety days. Second, *Rembert* is inapposite. Holders issued on an arrest warrant, as in *Rembert*, are different than holders issued for a parole or probation violation. *See State v. Hubbard*, 662 N.E.2d 394, 104 Ohio App. 3d 443, 446 (Ohio Ct. App. 1995). Ohio courts have held that "[t]he existence of a valid probation violation holder serves to prevent the triggering of the triple-count provision" and that the state is not required "to shoulder the burden of proving service to the defendant in a parole or probation holder case." *Id.*, *citing State v. Brown*, 597 N.E.2d 97, 64 Ohio St. 3d 476, 479 (Ohio 1992); *accord State v. Donald*, 2004 Ohio App. LEXIS 6705 ¶P15 (Ohio Ct. App. 2004) ("The requirement that a detainee be served with the underlying notice of charge is inapplicable to the parole holder situation.") Because a valid probation holder negates the application of the triple count provision by its very existence, any failure to serve the holder on Unsworth is immaterial. Further, Unsworth has not shown that, in the absence of his counsel's stipulation, the state would have been unable to admit evidence that the holder existed. Thus, he cannot demonstrate that his counsel's stipulation either fell below an objective standard of reasonableness or affected the outcome of his case.

Therefore, Unsworth's assignment of error pertaining to ineffective assistance of counsel and speedy trial rights is not well taken.

**B.**      **Grounds Seven through Eleven: Ineffective Assistance of Appellate Counsel**

In grounds seven through eleven, Unsworth alleges that he was denied his right to effective assistance of appellate counsel because his appellate counsel: (1) filed an *Anders* brief forcing Unsworth to proceed *pro se*; (2) improperly merged his two convictions for purposes of calculating his speedy trial rights; (3) failed to raise trial counsel's failure to object to the imposition of consecutive sentences arising from a single incident; (4) failed to raise as error the trial court's imposition of a sentence greater than the minimum on the basis of evidence not submitted to a jury; and (5) failed to raise as error the trial court's denial of his motion to suppress the victim's in-court identification.

To prove ineffective assistance of appellate counsel, appellant must show deficient performance of appellate counsel that is prejudicial to the defendant under the *Strickland* test. *See* Part A, *supra*, for a discussion of the *Strickland,* standard; *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993).  Counsel must provide reasonable professional judgment in presenting the appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986), *quoting Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).  Failure to raise "significant and obvious" issues on appeal can constitute ineffective assistance of appellate counsel.  *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999).  "[No] decision of this Court suggests ... that the indigent defendant has a constitutional right to compel appointed counsel to press

24

nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U S 745, 750-54 (1983); *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (tactical choices are properly left to the sound professional judgment of counsel). Failure of appellate counsel "to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005), *citing Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001).

### 1. Ground Seven: Filing Of an *Anders* Brief

Unsworth argues that he was denied effective assistance of appellate counsel when his appellate counsel filed an *Anders* brief thereby forcing Unsworth to proceed *pro se* during his direct appeal.

An appellate attorney's assistance is not rendered *per se* ineffective by the filing of an *Anders* brief. Such a rule would effectively nullify the Supreme Court's ruling in *Anders v. California*, 386 U.S. 738, 741-742 (1967). In *Anders*, the Supreme Court found that counsel may seek to withdraw after diligently investigating the possible grounds of appeal if he or she is convinced that the appeal is frivolous and files a brief referring to anything in the record that might arguably support the appeal. *Id.* Also, a copy of appellate counsel's brief should be furnished to the appellant and time allowed for him to raise any other arguments. *Id.* In a subsequent decision, the Supreme Court held that the proper standard for evaluating a claim that appellate counsel was ineffective for withdrawing as specified in *Anders* is the *Strickland* standard. *Smith v. Robbins*, 528 U.S. 259, 285-286 (2000) (Habeas petitioner "must first show that his counsel was objectively unreasonable ... in failing to find arguable issues to appeal -- that

is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them.")

Here, the state appellate court granted appellate counsel's motion to withdraw and found that her *Anders* brief was adequate.  (Doc. No. 10, Exh. 33.)  Unsworth was free to file a response to counsel's brief if he thought the brief was inadequate and did, in fact, file a response raising six additional assignments of error.  (Doc. No. 10, Exh. 30.)  The six assignments of error are the same as the ones discussed above and found to be entirely lacking in merit.  Because all the issues Unsworth raised lack merit, he cannot demonstrate prejudice under *Strickland* as there is no reasonable probability that inclusion of these issues would have changed the result of the appeal.  In addition, the state appellate court's findings that there were no grounds for a meritorious appeal and that Unsworth's appeal was frivolous constitute a reasonable application of clearly established federal law.  Therefore, this assignment of error is not well taken.

### 2.        Ground Eight: Merger of Appeals

Unsworth alleges that he was denied effective assistance of appellate counsel when his counsel merged both of his cases on appeal.  Unsworth believes the merger resulted in the court improperly using motions made during his burglary case to toll his speedy trial rights with respect to the rape charges.  Appellate counsel cannot be deemed to have been ineffective for merely filing a motion seeking to consolidate the appeal, especially where both indictments stemmed from the same incident and jointly proceeded to trial.  Assuming *arguendo* that Unsworth's characterization of the state appellate court's tolling calculations is correct, an appellate counsel cannot be deemed ineffective because a court purportedly made an improper finding.  Unsworth's suggestion that appellate counsel's motion to consolidate the appeals

caused a court to improperly apply the law is frivolous.  This assignment of error is without merit.

### 3.    Grounds Nine and Ten: Consecutive and Non-Minimum Sentences

In ground nine, Unsworth argues that appellate counsel was ineffective for failing to raise the argument that the imposition of consecutive sentences was improper under Ohio law. Unsworth argues that the Court failed to gives it reasons for imposing a consecutive sentence. Unsworth's allegation that the sentencing judge failed to give reasons for selecting the sentence imposed contradicts the sentencing transcript.  The state appellate court rejected this argument and found that the sentencing judge made the necessary findings.  (Doc. No. 10, Exh. 39.)  The sentencing judge specifically made findings on the record that Unsworth had a high likelihood of recidivism, that a minimum term would demean the seriousness of the offense and would not adequately protect the public, and that Unsworth committed the worst form of the offenses of which he was convicted.  (Doc. No. 10, Exh. 38 at 37-41.)  Because Unsworth is alleging a violation of state law, his claim is not cognizable upon habeas review unless the error of state law is so egregious that it denies fundamental fairness to a petitioner.  Here, there was no error in sentencing.

In ground ten, Unsworth argues that appellate counsel was ineffective for failing to raise the argument that the imposition of a sentence greater than the minimum under Ohio's sentencing statutes was unconstitutional based on the Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296 (2004).  The state appellate court rejected Unsworth's argument and observed that it had "consistently rejected the application of *Blakely* to Ohio's sentencing scheme" and cited its prior opinion in *State v. Curlis*, 2005 Ohio App. LEXIS 1201, 2005-Ohio-

1217 (Ohio Ct. App. 2005).[11]  (Doc. No. 10, Exh. 39.)  Based upon its prior rulings, the state appellate court found Unsworth's appellate counsel was not ineffective for failing to raise a *Blakely* claim as such a claim would have been futile.  *Id*.

For the foregoing reasons, these assignments of error are not well taken.

### 4.      Ground Eleven: Unreliable Identification

Unsworth argues that his appellate counsel was ineffective for failing to raise as error the trial court's decision overruling his motion to suppress the victim's in-court identification. Unsworth alleges the identification was tainted and unreliable; and, therefore, violated his due process rights guaranteed by the Sixth Amendment.

The Due Process Clause prohibits the use of identifications that, under the totality of the circumstances, are impermissibly suggestive and present an unacceptable risk of irreparable misidentification.  *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375 (1972).  "A conviction based on identification testimony following pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"  *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986), *quoting Simmons v. United States*, 390 U.S. 377, 384 (1968).  The paramount issue is whether the suggestiveness so undermines the reliability of the identification as to offend due process.  *See Foster v. California*, 394 U.S. 440 (1969).  A court looks to the reliability of the identification in determining its admissibility; if an identification is reliable, it will be admissible

---

[11]  One fact that has been overlooked by both parties as well as the state appellate court is that *Blakely* was decided on June 24, 2006 – nine days *after* appellate counsel filed her *Anders* brief.

28

even if the confrontation procedure was suggestive.  *See Manson*, 432 U.S. at 114; *Biggers*, 409 U.S. at 199.  Following *Biggers*, a court shall consider the following factors in evaluating reliability:  1) the opportunity of the witness to view the defendant at the initial observation; 2) the witness's degree of attention; 3) the accuracy of the witness' prior description of the defendant; 4) the level of certainty shown by the witness at the pretrial identification; and 5) the length of time between the initial observation and the identification.  409 U.S. at 199-200.  The degree of reliability of the identification is to be considered in light of the degree of suggestiveness of the identification procedure and the totality of the circumstances in determining whether due process requires suppression of the identification.  *See Manson*, 432 U.S. at 113-14.

The victim stated that her assailant had tan skin, but she "couldn't tell much about his face" except that he was clean shaven.  (Tr. 269.)  The victim testified that the most distinguishable feature of the attacker's face were his "mean eyes."  (Tr. 270.)  A composite sketch was created and, although Unsworth avers that the sketch of the attacker does not resemble him, the victim herself testified that only the upper part of the sketch, especially the hairline,  was "pretty good" but that she was not sure about the accuracy of the lower part.  (Tr. 275-277.)  She was unable to identify Unsworth from two separate photo arrays presented to her prior to trial.  (Tr. 276-278.)  At trial, the victim identified Unsworth in court as her assailant and explained that changes in his hair and facial hair were the reasons she could not identify him in the various photo arrays previously presented to her.  (Tr. 281.)

Unsworth's appellate counsel cannot be deemed ineffective for failing to raise this issue unless there is a reasonable probability that inclusion of the issue would have changed the result

29

of the appeal.  The state court's decision to allow the in-court identification was not an unreasonable application of clearly established federal law as set forth in *Biggers*.  In the instant case, the victim had ample opportunity to view Unsworth at the time of the offense.  (Tr. 234-270.)  Generally, a court  places greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator.  *See United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 2004) (finding heightened degree of attention where witness spoke with robber and studied his features while looking for an opportunity to escape); *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001) (finding heightened degree of attention where robber confronted witnesses with a gun).  The victim's prior description of the perpetrator's hairline and describing him as clean-shaven was not necessarily inaccurate because changes in hair length and the absence of facial hair are mutable traits.  (Tr. 269.)

Finally, although a period of seven months passed between the burglary and rape and the identification, this time lapse does not bar an otherwise reliable identification.  *See Crozier*, 259 F.3d at 512 (a five-year time lapse does not operate to bar an otherwise reliable identification), citing *United States v. Hill*, 967 F.2d 226, 233 (6th Cir.1992); *United States v. Marchand*, 564 F.2d 983 (2nd Cir.1977) (nine-month delay upheld); *United States ex rel. Clark v. Fike*, 538 F.2d 750 (7th Cir.1976) (five-month delay upheld).

Unsworth argues that the victim's inability to previously identify him from two separate photo arrays renders her identification unreliable.  However, the fact that a witness cannot identify the accused at a pretrial identification procedure does not by itself establish a suggestive identification procedure and is generally an insufficient basis to exclude his or her testimony identifying the accused in court; a witness's uncertainty goes to the weight, not the admissibility,

30

of the identification testimony.  *United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir.1987); *United States v. Hamilton*, 684 F.2d 380, 383 (6th Cir.1982).  The trial court permitted defense counsel to use the photo arrays and the victim's inability to identify him from the photos for impeachment, and defense counsel did in fact cross-examine the victim about the photo arrays. (Tr. 280, 289-292.)

Based on the totality of the circumstances, the victim's identification of Unsworth as her attacker was not impermissibly suggestive and did not result in an irreparable misidentification. Under such circumstances, Unsworth's appellate counsel cannot be said to have been constitutionally ineffective because there is not a reasonable probability that inclusion of the issue would have changed the result of the appeal.  Therefore, Unsworth's assignment of error is not well taken.

## IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Unsworth's Petition be DENIED.

/s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: September 11, 2007

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**