**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Chuckie Thomas Unsworth,** | ) | **CASE NO. 3:06 CV 1856** |
| | ) | |
| Petitioner, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Khelleh Konteh, Warden,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Respondent. | ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge Vecchiarelli (Doc. 16) which recommends denial of the Petition for Writ of Habeas Corpus now pending before the Court.  For the following reasons, the Report and Recommendation is ACCEPTED.

**Introduction**

Petitioner, Chuckie Thomas Unsworth, commenced this action with the filing of a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is incarcerated after a jury trial in the Lukas County Court of Common Pleas.  This matter has been fully briefed and the Magistrate Judge issued her Report and Recommendation recommending that the Petition for

1

Writ of Habeas Corpus be denied.  Petitioner has filed Objections to the Report and Recommendation.

**Standard of Review**

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts provides, "The judge must determine *de novo* any proposed finding or recommendation to which objection is made.  The judge may accept, reject, or modify any proposed finding or recommendation."

**Discussion**

The state appellate court set forth the following facts which are presumed to be correct: ... Appellant was found guilty of one count of aggravated burglary, in violation of [Ohio Revised Code §] 2911.11(A)(1), and two counts of rape, in violation of  [Ohio Revised Code §] 2907.02(A)(2). Appellant was sentenced to three, consecutive ten-year terms of incarceration. ...

During the morning hours of October 11, 2002, an elderly widow, Florence Sheroian, was alone in her home. Mrs. Sheroian went to her basement to do her laundry. After returning upstairs, she went to the bathroom. While in the bathroom, Sheroian heard an intruder in her home. She went into the hall, observed an unknown male coming towards her, asked the intruder to leave, and attempted to lead him to the front door. Rather than leave the premises, the intruder locked the front door, confronted Sheroian, and demanded money and her car. She advised him she had no car and told him where he could find her purse. The assailant ordered Sheroian to her knees, despite her pleas due to her two knee replacements, and committed multiple acts of rape. The eighty-one year old grandmother was then forced to insert her tongue into the assailant's anus. Following these acts, the assailant threatened to kill her if she reported the crimes and fled on foot.

The record reflects that during the course of investigation into these crimes, the investigating officers recovered physical evidence from the scene. Significantly, a left ring fingerprint recovered from the window used to enter the premises was determined by expert testimony to be a 14 point match with appellant. A rape kit was performed and DNA evidence was recovered. An expert forensic DNA analyst testified the DNA was consistent with appellant's DNA and inconsistent with all non Caucasian males and also was inconsistent with 99.5 percent of all Caucasian males.

2

> Defense counsel filed a motion to suppress statements based on Miranda, which was granted. This attorney later withdrew with the consent of appellant and substitute counsel was appointed. A Daubert motion was also filed and a hearing conducted. During trial, substitute counsel for appellant made a Crim.R. 2[9] motion for acquittal, which was denied.
>
> Appellant's chief defense witness, Charlene Brown, was appellant's girlfriend. Brown, a self-employed house cleaner from Toledo, testified that she met appellant at an area tavern in July 2002, and he moved into her home the next month. Brown presented exculpatory testimony based upon a notation on her calendar.
>
> Brown placed a broken heart with an arrow through it on October 10, 2002, the day before the crime. Brown testified that she was certain appellant had been at home ill and in bed on October 11, 2002, because of the sad heart symbol on her calendar. This symbol was placed on her calendar because appellant had stayed out all night and not brought home his paycheck to pay household bills. These actions "broke her heart," so she put the broken heart on her calendar. She testified that appellant spent the following day at home ill, resting in bed. Despite this claimed first-hand exculpatory knowledge, she failed to report this alibi information to anyone for many months following her live-in boyfriend's arrest.

The Petition asserts 11 claims for relief which the Magistrate Judge addressed on the merits.  Petitioner presents specific objections as to Grounds One and Two, only.  As to the remaining grounds, petitioner states only that he objects and relies on his earlier briefing.  He submits no specific objections, however.  Accordingly, this Court need not conduct a *de novo* review of those grounds.  *See Wallace v. Adams,* 1995 WL 141385 (6th Cir. March 24, 1995) (citations omitted) ("General objections to the entirety of a magistrate judge's report have the same effect as would a failure to object.  A party must make specific objections in order to pinpoint those portions of the magistrate judge's report that the district court must specifically consider, or else the party waives the issues on appeal.") and *Bates v. Chapleau*, 1994 WL 532937 (6th Cir. Sept. 30, 1994).  Consequently, the Court reviews Grounds One and Two.

Ground One asserts that trial counsel was ineffective because he did not present expert testimony to rebut the State's DNA evidence.  The Magistrate Judge found that trial counsel's

3

performance was not deficient given that he requested a *Daubert* hearing wherein the State's expert was examined; he filed a post-hearing brief wherein he argued that the database utilized by the laboratory was extremely limited; and he cross-examined both of the State's DNA witnesses during trial. The Magistrate Judge rejected petitioner's assertion that retaining a defense expert to conduct independent testing would have yielded different results as this was merely speculative.

With his Objections, petitioner submits two exhibits which he seems to assert negate the State's expert testimony that African Americans were excluded as a result of the DNA evidence. Petitioner fails to demonstrate ineffective assistance of counsel on this basis. The State's expert testified that the DNA from the rape kit was inconsistent with all non-Caucasian males. The Court has no reliable basis to conclude that these exhibits demonstrate, that but for trial counsel's errors, there is a reasonable probability that the outcome of petitioner's trial would have been different.

Ground Two asserts that trial counsel was ineffective because he did not call an expert witness to contradict the State's evidence concerning fingerprints. As with Ground One, petitioner fails to present evidence that retaining a fingerprint expert would have resulted in a different outcome at trial. Two detectives testified to a reasonable degree of certainty that the fingerprint left at the scene of the crime was made by petitioner. Petitioner's counsel cross-examined the witnesses in an attempt to downplay or discredit the evidence. Petitioner fails to identify how counsel's performance was constitutionally defective.

The Court has reviewed the remaining grounds and finds no clear error.

For the foregoing reasons, petitioner has not demonstrated that the Petition for Writ of

Habeas Corpus should be granted.

### **Conclusion**

For the reasons set forth herein and for the reasons set forth in the Magistrate Judge's Report and Recommendation, the Petition for Writ of Habeas Corpus is denied. Further, this Court hereby fully incorporates the Report and Recommendation by reference herein.

This Court now considers whether to grant a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253 which states in relevant part:

> \*\*\*
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . .
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

In *Slack v. McDaniel*, 529 U.S. 473 (2000), the United States Supreme Court determined that

> "[t]o obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'"

*Id.* at 483-4 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) ).

If the claim is not procedurally defaulted, then a habeas court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong." *Id.* at 484. In instances where a claim is procedurally defaulted, a COA should only issue if "jurists of

5

reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (emphasis supplied).

For the reasons stated above and in the Report and Recommendation, this Court finds no basis upon which to issue a certificate of appealablity.

IT IS SO ORDERED.

                                         /s/ Patricia A. Gaughan
                                        PATRICIA A. GAUGHAN
                                        United States District Judge

Dated: 12/10/07